## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 15-_____ |
| v. | : | DATE FILED: <u>May 13, 2015</u> |
| DAVID FILI, JR. | : | VIOLATIONS: |
| | | 18 U.S.C. § 1343 (wire fraud – 10 counts) |
| | : | 18 U.S.C. § 1344 (bank fraud – 2 counts) |
| | | Notice of forfeiture |

## I N F O R M A T I O N

## COUNTS ONE THROUGH TEN

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times relevant to this information:

1.     In or about January 2005, defendant DAVID FILI, JR. and G.B. began operating Capital Financial Mortgage Corp (hereinafter "CFMC"), as a mortgage brokerage company based in Delaware County, Pennsylvania.  Defendant FILI and G.B. were each fifty percent owners of CFMC and ran CFMC together.

2.     In operating as a mortgage brokerage company, CFMC acted as an intermediary between borrowers and mortgage lenders.  CFMC employees gathered information from potential borrowers and forwarded that information to lenders, who underwrote and approved the loans.  The lenders paid CFMC a fee for each loan referral that resulted in a successful loan transaction.

3.     Beginning in or about January 2006, CFMC transitioned from being a mortgage brokerage company into being a direct mortgage lender.  In operating as a direct

mortgage lender, CFMC originated its own mortgages, acting as the lender itself. When CFMC originated a loan as a mortgage lender, CFMC funded the loan through the use of a warehouse line of credit, and then sold the loan to an institutional investor, typically a bank or other mortgage lender (hereinafter referred to collectively as the "Investors").

4.     For each mortgage loan that CFMC originated as a mortgage broker or issued as a direct mortgage lender, CFMC utilized the services of a settlement agent, commonly referred to as a "title" or "escrow" company. It was the job of the settlement agent to, among other things, issue wiring instructions to the lender, comply with the terms of the closing instructions, provide title closing services, issue title insurance policies, act as the escrow agent for the funds wired to the title company by the lender, disburse escrow funds to satisfy any prior liens, repay any existing first-mortgages and otherwise distribute the escrow funds pursuant to the HUD-1 settlement statement, and then record the deed and mortgage with the appropriate municipality.

5.     "Warehouse lending" is a specialized type of lending that commercial banks, other financial institutions, and other large mortgage lenders provide, for a fee, to smaller entities involved in the mortgage banking business. Typically, under a warehouse lending contractual agreement, the warehouse lender provides interim financing for mortgage loans by establishing a warehouse line of credit from which a mortgage lender can borrow, or "draw," in order to fund mortgage loans that the mortgage lender originates. Under these types of agreements, the warehouse lender typically advances funds at the request of the mortgage lender. The warehouse lender then typically retains a security interest in the mortgage loan as collateral until the warehouse advance is repaid.

2

6.     CFMC entered into contractual agreements with the following warehouse lenders (hereinafter referred to collectively as the "Warehouse Lenders") during the following periods of time, pursuant to which the Warehouse Lenders extended to CFMC warehouse lines of credit, which CFMC drew upon to issue mortgage loans:

a.     Popular Warehouse Lending, LLC, between in or about 2006 and in or about 2007;

b.     National City Bank, FDIC Certificate Number 6557, between in or about February 2007 and in or about December 2008;

c.     PNC Bank, National Association, FDIC Certificate Number 6384, between in or about January 2009 and in or about December 2009;

d.     Flagstar Bank, FSB, FDIC Certificate Number 32541, between in or about January 2010 and in or about February 2013;

e.     Customers Bank, FDIC Certificate Number 34444, between in or about March 2012 and in or about March 2013; and

f.     First Funding, Inc., between in or about February 2013 and in or about March 2013.

7.     Each of the contractual agreements entered into between CFMC and the Warehouse Lenders provided that the Warehouse Lenders would advance funds only upon the submission by CFMC of certain required documents and only for disbursal through a third-party settlement agent (i.e., a title company).  Each Warehouse Lender required CFMC to submit documentation indicating the loan number, borrower's name, investor's name, closing agent's name, note amount, requested purchase date, the total amount of the wire requested from the

3

warehouse line of credit, and various other documentation, including a Closing Protection Letter issued by the settlement agent and wiring instructions for the settlement agent's trust account.

8.      Prior to the inception of CFMC and continuing to in or about October 2011, G.B. also had an ownership interest, either directly or indirectly, in various title companies, including PANJ Abstract, Inc. ("PANJ Abstract"), Tri-State Land Transfer LLC, Nationwide Land Transfer LLC ("Nationwide"), Atlantic Closing Services LLC ("Atlantic Closing") and Gulf Coast Land Transfer Inc. (collectively referred to as "G.B.'s Title Companies"). G.B.'s Title Companies shared office space with CFMC once CFMC was established by G.B. and defendant DAVID FILI, JR.

9.      Between in or about January 2005 and in or about October 2011, CFMC principally used one of G.B.'s Title Companies as the third-party settlement agent for the mortgage loans CFMC brokered and originated. Between in or about October 2011 and in or about March 2013, CFMC principally used Park Avenue Abstract, a title company owned by R.R., as the third party settlement agent for the mortgage loans CFMC originated.

## THE SCHEME

10.     Beginning sometime prior to June 2006, and continuing until in or about March 2013, within the Eastern District of Pennsylvania and elsewhere, defendant

### DAVID FILI, JR.

together and with G.B., and others known and unknown, devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

4

## MANNER AND MEANS

11.     Beginning sometime prior to June 2006, in order to pay for real estate investments and an expensive lifestyle that included luxury homes and sport fishing yachts, G.B. began to withdraw money from G.B.'s Title Companies' escrow accounts that had been advanced by lenders to fund mortgage loans, by transferring the funds from the escrow accounts to other accounts for G.B.'s personal use. G.B. did not disclose to the lenders that he was using the loan proceeds for his own personal needs and instead led the lenders to believe that the funds would be used in the manner reflected on the HUD-1 settlement statements provided to the lenders. G.B.'s personal use of escrow funds caused a monetary shortage in G.B.'s Title Companies' escrow accounts, which in turn caused delays in paying off, or satisfying, the first mortgages of those clients who were refinancing their homes.

12.     In order to hide the escrow account shortage from lenders, G.B. simply created and caused to be created new title companies that he owned either openly or surreptitiously, and rolled the escrow shortages over to the new entities. Because G.B.'s Title Companies maintained a steady stream of business, G.B. was initially able to satisfy the outstanding mortgages, although this was typically done late, by using funds advanced by lenders for subsequent loans. In this manner, G.B. kept his Title Companies afloat as he continued to siphon money from them for his personal use, all the while maintaining a rolling and ever-growing escrow shortage.

13.     Beginning in or about January 2006 and continuing to in or about March 2013, defendant DAVID FILI, JR. began withdrawing money from CFMC to fund his own excessive spending, which included mortgage payments on a vacation home and extensive casino and sports gambling.

5

14.     In order to mitigate problems caused by the escrow shortage at G.B.'s Title Companies and hide the existence of the scheme from the Investors and the Warehouse Lenders, G.B. and defendant DAVID FILI, JR. also used funds from CFMC's warehouse lines of credit to satisfy delinquent first mortgages that existed due to G.B.'s siphoning of money from G.B.'s Title Companies' escrow accounts for his personal use.

15.     In order to hide the existence of the scheme from the Investors and the Warehouse Lenders, G.B. and defendant DAVID FILI, JR. hid G.B.'s ownership interest in and control over G.B.'s Title Companies from the Investors and the Warehouse Lenders and in response to questions initially claimed that G.B. had no ownership interest in or control over any title companies, including on the following dates:

a.     On or about June 22, 2009 and May 10, 2010, G.B. and defendant DAVID FILI, JR. sent Flagstar Bank, FSB signed "Representations of Borrower/Guarantors" forms in which G.B. and defendant FILI falsely claimed that they each had no direct or indirect interest and/or ownership in any title company, escrow company, closing office or other related real estate activities.

b.     On or about May 28, 2010, defendant DAVID FILI, JR. sent NYCB Mortgage Company LLC a signed "Affiliated Business Certificate" in which defendant FILI falsely represented that neither he nor G.B. had any ownership interest, either directly or indirectly, in a title company.

c.     On or about April 20, 2011, G.B. sent an email to Shawn Cressman, Account Executive at NYCB Mortgage Company LLC, on which defendant DAVID FILI, JR. was copied, in which G.B. falsely claimed, among other things, that G.B. had no ownership interest in a title company.

6

16.     In selling the mortgage loans that CMFC issued to Investors, G.B. and defendant DAVID FILI, JR. represented these loans as "first mortgages" and failed to disclose that, at the time of the sale, CFMC and G.B.'s Title Companies had often failed to satisfy the then-existing first mortgages. Thus, at the time of the sale of many of these mortgages by CFMC, despite being sold as "first mortgages" they were in reality second mortgages. However, by using subsequent draws from CFMC's warehouse lines of credit, CFMC and G.B.'s Title Companies were typically able to satisfy the first mortgages before the Investors discovered that they had in fact purchased a second mortgage that was subject to an unpaid first mortgage.

17.     In or about early 2010, like G.B.'s Title Companies, CFMC began experiencing serious cash flow problems, caused in part by G.B and defendant DAVID FILI, JR. using CFMC to both pay their own personal expenses (including, among other things, mortgage payments for multiple homes, payments on multiple luxury vehicles, country club membership dues, and rental of a suite at the Wells Fargo Center) and to cover G.B.'s Title Companies' escrow account shortage, without regard for whether the funds were legitimately available in CFMC's bank accounts.

18.     Beginning in 2010, in order to hide the existence of the scheme from the Investors and the Warehouse Lenders, G.B. began advancing large amounts of money from G.B.'s Title Companies' escrow accounts back to CFMC to help cover CFMC's operating expenses, G.B.'s personal expenses, and defendant DAVID FILI, JR.'s personal expenses. For example, in 2010 alone, G.B.'s Title Companies advanced over $1,300,000 to cover personal expenses of G.B., and over $500,000 to cover a portion of CFMC's operating expenses. These advances, which were made using funds that had been wired by lenders to be used in connection

with specific loans, served to further increase the escrow account shortage of G.B.'s Title Companies.

19.     In or about June 2011, in an effort to come up with funds to reduce the escrow account shortage, G.B. and defendant DAVID FILI, JR. agreed with each other to "refinance" their personal residences through CFMC, sell the loans to Investors without satisfying the then-existing first mortgages, and use the loan proceeds instead to reduce G.B.'s Title Companies' escrow account shortage.

20.     On or July 7, 2011, G.B. and defendant DAVID FILI, JR. caused their accountant to prepare a false, backdated sales contract purporting to document the sale by G.B. of G.B.'s CFMC stock to defendant FILI, which G.B. and defendant FILI intended to use to convince the Warehouse Lenders that G.B. had no ownership in CFMC, when in reality G.B. continued to own and jointly control CFMC with defendant FILI.

21.     On or about September 19, 2011, G.B and defendant DAVID FILI, JR., acting as the owners of CMFC, and using G.B.'s Atlantic Closing as the title company, caused CFMC to approve an approximately $417,000 mortgage loan from CFMC to G.B. to refinance his own residence located on Hunters Road in Newtown Square, Pennsylvania. At the time, U.S. Bank National Association held a first mortgage on G.B.'s residence, and G.B. and defendant FILI agreed that they would not disburse any funds to U.S. Bank National Association to satisfy the first mortgage.

22.     On or about September 30, 2011, G.B. and defendant DAVID FILI, JR., acting as the owners of CMFC, and using Atlantic Closing as the title company, caused CFMC to approve an approximately $416,000 mortgage loan from CFMC to defendant FILI to refinance his personal residence located on Lexington Avenue in Havertown, Pennsylvania. At the time,

Bank of America, N.A. held a first mortgage on defendant FILI's residence, and G.B. and defendant FILI agreed that they would not disburse any funds to Bank of America, N.A. to satisfy the first mortgage.

23.     In or about October 2011, G.B. attempted to forestall an audit of Atlantic Closing by Westcor Land Title Insurance Company ("Westcor"), the title insurance underwriter for Atlantic Closing, by falsely informing the Westcor auditors that he was undergoing treatment for cancer, and when that failed by refusing to produce documents requested by the auditors.

24.     In or about October 2011, G.B., knowing that the Westcor audit findings would result in Atlantic Closing losing its underwriter, convinced R.R., the owner of another title company, Park Avenue Abstract, to enter into a new business relationship with CFMC.  R.R. agreed that Park Avenue Abstract would serve as the title company for the majority of CFMC's mortgage loans, with G.B. operating a branch of Park Avenue Abstract from CFMC's offices in Delaware County, Pennsylvania, and R.R. operating a branch of CFMC from Park Avenue Abstract's offices in New Jersey.  In forming this new business relationship, G.B. misled R.R. about the financial health of CFMC, failed to disclose to R.R. the existence of the escrow shortage at G.B.'s Title Companies, misled R.R. about the reasons that G.B. was terminating his own escrow operations, and promised R.R. vast profits.

25.     On or about October 20, 2011, Atlantic Closing was officially terminated as an agent for Westcor.  As of that date, Atlantic Closing no longer had a title insurance underwriter, was unable to issue title insurance policies, and was therefore forced to cease operations as a title company.  At the time Westcor terminated Atlantic Closing as an agent, Atlantic Closing had an escrow shortage of over $4,000,000, approximately 17 first mortgages

9

that it had failed to repay, and virtually no money it its bank accounts, leaving it unable to satisfy these 17 outstanding first mortgages.

26.    G.B. and defendant DAVID FILI, JR. hid the Atlantic Closing escrow account shortage from R.R., and G.B. convinced R.R. to open new escrow accounts for Park Avenue Abstract at PNC Bank, which was the same bank where G.B. also established bank accounts for CFMC and G.B.'s Title Companies.  G.B. also obtained access to the newly-created Park Avenue Abstract bank accounts at PNC Bank from R.R.  By gaining access to these Park Avenue Abstract bank accounts, G.B and defendant DAVID FILI, JR. were able to continue concealing their scheme and were able to gain direct access to funds advanced by the Warehouse Lenders to Park Avenue Abstract.

27.    G.B. and defendant DAVID FILI, JR. concealed from the Warehouse Lenders and the Investors that they had obtained access to Park Avenue Abstract's bank accounts at PNC Bank and instead led the Warehouse Lenders and the Investors to believe that Park Avenue Abstract was an independent third-party settlement agent.

28.    G.B. and defendant DAVID FILI, JR. used advances from CFMC's warehouse line of credit that were sent to Park Avenue Abstract by lenders to secretly satisfy the 17 unpaid first mortgages that Atlantic Closing had failed to satisfy prior to being terminated by Westcor.  In this way, G.B. and defendant FILI effectively rolled over the approximately $4,000,000 escrow shortage from G.B.'s Title Companies to Park Avenue Abstract.

29.    On or about November 8, 2011, G.B. and defendant DAVID FILI, JR. caused the approximately $416,000 second mortgage held by CFMC on defendant FILI's residence in Havertown to be sold by CFMC to NYCB Mortgage Company LLC ("NYCB").  At the time they sold this mortgage, G.B. and defendant FILI failed to disclose to NYCB that they

10

had failed to satisfy the first mortgage held by Bank of America, N.A., and instead led NYCB to believe that it was purchasing a first mortgage on defendant FILI's residence.

30.    On or about November 22, 2011, G.B. and defendant DAVID FILI, JR. caused the approximately $417,000 second mortgage held by CFMC on G.B.'s residence in Newtown Square to be sold by CFMC to Wells Fargo Home Mortgage ("WFHM"). At the time they sold this mortgage, G.B and defendant FILI failed to disclose to WFHM that they had failed to satisfy the first mortgage held by U.S. Bank National Association, and instead led WFHM to believe that it was purchasing a first mortgage on G.B.'s residence.

31.    Beginning in or about April 2012, CFMC transitioned its primary warehouse lender from Flagstar Bank to Customers Bank and began borrowing money from Customers Bank on the new warehouse line of credit.

32.    In order to be able to manipulate the loan proceeds more easily, G.B. created false wiring instructions for Customers Bank to use when advancing funds on the Customers Bank warehouse line of credit. These false wiring instructions purported to be from Park Avenue Abstract, and appeared on their face to contain the account information for Park Avenue Abstract's escrow account at PNC Bank and listed Park Avenue Abstract as the account holder, but in reality the account number was an account that belonged to CFMC, not Park Avenue Abstract. G.B. and defendant DAVID FILI, JR. caused these false wiring instructions to be sent to Customers Bank on numerous occasions in connection with warehouse line of credit advance requests. By misleading Customers Bank into believing it was wiring warehouse line of credit advances into the escrow account of what it believed to be an independent, third-party title company, G.B. and defendant FILI lulled Customers Bank into believing its funds would be disbursed as indicated in the closing instructions. These false wiring instructions allowed G.B.

11

and defendant FILI to gain immediate access to funds advanced on the Customers Bank warehouse line of credit and to control when, if ever, the loan proceeds would be sent to Park Avenue Abstract's legitimate escrow account for dispersal in connection with the actual loan the funds had been advanced for.

33.     On or about January 6, 2012, in order to mislead Flagstar Bank into thinking that CFMC was independent from G.B.'s Title Companies and that G.B. did not have involvement with CFMC's management, defendant DAVID FILI, JR. sent an email to Flagstar Bank enclosing a false sales contract, signed by both G.B. and defendant FILI, which purported to document the sale by G.B. of G.B.'s CFMC stock to defendant FILI.

34.     On or about October 23, 2012, after defendant DAVID FILI, JR. learned that NYCB had discovered that the prior first mortgage held by Bank of America, N.A. on defendant FILI's residence in Havertown, Pennsylvania, had not been repaid, G.B. caused to be opened a new bank account at PNC Bank in the name of Atlantic Closing, over which G.B. had access and control.

35.     On or about October 23, 2012, G.B. and defendant DAVID FILI, JR. caused a withdrawal of approximately $415,788 from a Park Avenue bank account at PNC Bank over which they had gained control.  After G.B. caused the deposit of those funds into the newly-opened Atlantic Closing bank account at PNC Bank, G.B. and defendant FILI caused the wiring of those funds to NYCB to be used to satisfy the unpaid first mortgage held by Bank of America, N.A. on defendant FILI's residence in Havertown.

36.     On or about October 24, 2012, defendant DAVID FILI, JR. sent an e-mail to NYCB enclosing a letter from defendant FILI in which defendant FILI falsely claimed that

CFMC's failure to satisfy the first mortgage on his residence in Havertown prior to selling the loan to NYC was a simple mistake.

37.     On or about October 25, 2012, fearing that Flagstar Bank could end their warehouse relationship with CFMC and uncover the fraudulent scheme, defendant DAVID FILI, JR. sent a letter to Flagstar Bank containing numerous false statements, including that he was not aware that his prior mortgage had not been repaid and that G.B. was no longer involved with CFMC.

38.     Between in or about November 2011 and in or about March 2013, G.B. made wire transfers of over $1,000,000 from Park Avenue Abstract and CFMC bank accounts for his own personal expenses, which further increased the Park Avenue Abstract escrow account shortage.

39.     As the escrow account shortage that had originally begun with G.B.'s Title Companies and was ultimately rolled over to Park Avenue Abstract continued to grow due to G.B.'s and defendant DAVID FILI, JR.'s misuse of warehouse line of credit draws for their own personal use, additional warehouse credit was needed to support the fraud scheme. G.B. and defendant FILI agreed that they would seek and obtain additional warehouse lines of credit from other lenders.

40.     In or about January 2013, G.B. and defendant DAVID FILI, JR. caused CFMC to submit an application, signed by defendant FILI, to Stonegate Mortgage Corp. for a new warehouse line of credit. This application contained false 2011 and 2012 CFMC financial statements that did not accurately depict CFMC's financial condition.

41.     In or about February 2013, G.B. and defendant DAVID FILI, JR. caused CFMC to submit an application, signed by defendant FILI, to First Funding Inc. for a new

warehouse line of credit. This application contained false CFMC financial statements that did not accurately depict the company's financial condition.

42.     Between in or about January 2013 and in or about March 2013, G.B. and defendant DAVID FILI, JR. misled several Investors who purchased approximately 27 loans from CFMC by causing those loans to be misrepresented as "first mortgages" when in reality CFMC and Park Avenue Abstract had failed to repay the then-existing first mortgages and they were in fact second mortgages. Unlike with earlier sales of mortgages by CFMC to Investors, with respect to these 27 second mortgages, CFMC and Park Avenue Abstract never satisfied the outstanding first mortgages. These 27 loans were in addition to G.B.'s 2011 refinancing of his Newtown Square residence, which had also been falsely sold to an Investor as a "first mortgage" and the outstanding first mortgage was never satisfied. Thus, at the time the scheme ended in or about March 2013, those Investors who had purchased these approximately 28 loans from CFMC were left with worthless second mortgages, causing them to sustain approximate losses as follows:

a.     Stonegate Mortgage Corporation, based in Indianapolis, Indiana, purchased approximately 21 worthless second mortgages from CFMC for approximately $5,355,500 believing them to be first mortgages.

b.     M&T Bank, based in Buffalo, NY, (FDIC #588), purchased approximately 4 worthless second mortgages from CFMC for approximately $854,699 believing them to be first mortgages.

c.     Wells Fargo Home Mortgage, based in Des Moines, Iowa, a division of Wells Fargo Bank (FDIC #3511), purchased one worthless second mortgage from CFMC for approximately $417,000 believing it to be a first mortgage.

       d.       NYCB Mortgage Company, LLC, based in Cleveland, Ohio, a subsidiary of New York Community Bank (FDIC # 16022), purchased one worthless second mortgage from CFMC for approximately $320,000 believing it to be a first mortgage.

       e.       Mortgage Services III, LLC, based in Bloomington, Illinois, a subsidiary of First State Bank (FDIC #15752), purchased one worthless second mortgage from CFMC for approximately $166,347 believing it to be a first mortgage.

     43.       Moreover, in addition to misleading these Investors, G.B. and defendant DAVID FILI, JR. caused approximately 27 individual clients of CFMC who had gone to CFMC to borrow money to refinance their homes to be misled into believing that their first mortgages would be satisfied, when in reality their first mortgages were never satisfied and instead G.B. and defendant FILI misappropriated the loan proceeds. By their actions, G.B and defendant FILI left these approximately 27 individual clients with two mortgages on their properties.

     44.       By in or about March 2013, at the time the scheme ended, CFMC had failed to repay to Customers Bank over $2,500,000 due on advances from the Customers Bank warehouse line of credit for approximately 19 new loans, which G.B. and defendant FILI had misappropriated, causing Customers Bank to sustain losses of over $2,500,000.

     45.       All told, as a result of their actions, G.B. and defendant DAVID FILI, JR., caused Warehouse Lenders and Investors to sustain total losses of approximately $9,700,000.

     46.       On or about each of the following dates, in the Eastern District of Pennsylvania and elsewhere, defendant

**DAVID FILI, JR.**

for the purpose of executing the scheme described above, and attempting to do so, and aiding and abetting its execution, caused to be transmitted by means of wire communication in interstate

commerce the signals and sounds described below, each transmission constituting a separate

count:

| COUNT | DATE | ORIGIN OF WIRE | DESTINATION OF WIRE | METHOD OF WIRE AND DESCRIPTION |
|-------|------|----------------|---------------------|-------------------------------|
| ONE | 9/19/11 | Pennsylvania | Michigan | Mortgage loan package for G.B.'s residence in Newtown Square, Pennsylvania uploaded electronically via the internet from CFMC to Flagstar Bank containing false Closing Protection Letter issued by Atlantic Closing. |
| TWO | 10/11/11 | Pennsylvania | Michigan | Mortgage loan package for defendant DAVID FILI, JR's residence in Havertown, Pennsylvania uploaded electronically via the internet from CFMC to Flagstar Bank containing false Closing Protection Letter issued by Atlantic Closing. |
| THREE | 1/6/2012 | Pennsylvania | Kentucky | E-mail from Defendant DAVID FILI, JR.'s CFMC e-mail address to Senior VP for Warehouse Lending at Customers Bank attaching false CFMC financial statements. |
| FOUR | 10/23/12 | Pennsylvania | New York | Bank wire transfer of approximately $410,597 from Atlantic Closing Services LLC account at PNC Bank ending in 2342 to NYCB Mortgage Company Account at New York Community Bank account ending in 0000 |
| FIVE | 10/24/12 | Pennsylvania | New Jersey | E-mail from defendant DAVID FILI, JR. to NYCB Mortgage Company LLC enclosing letter from defendant FILI falsely explaining that failure to pay off first mortgage was a simple mistake. |

| COUNT | DATE | ORIGIN OF WIRE | DESTINATION OF WIRE | METHOD OF WIRE AND DESCRIPTION |
|---|---|---|---|---|
| SIX | 1/10/13 | Pennsylvania | New Jersey | E-mail from defendant DAVID FILI, JR. to Customers Bank's Warehouse Lending Department attaching false wiring instructions listing Park Avenue Abstract as account holder but providing CFMC bank account number ending in 4102 at PNC Bank. |
| SEVEN | 1/15/13 | New York | Pennsylvania | Bank wire transfer of approximately $321,533 from NYCB Mortgage Company LLC account to Customers Bank Warehouse Lending account ending in 1534, to be applied to CFMC's outstanding warehouse line of credit balance |
| EIGHT | 3/4/13 | Pennsylvania | Indiana | E-mail from defendant DAVID FILI, JR. to Stonegate Mortgage requesting update on the funding status for nine mortgages that CFMC was selling to Stonegate Mortgage. |
| NINE | 3/6/13 | Illinois | Pennsylvania | Bank wire transfer of approximately $166,347 from Mortgage Services III LLC bank account to Customers Bank Warehouse Lending account ending in 1534 , to be applied to CFMC's outstanding warehouse line of credit balance. |
| TEN | 3/7/13 | New York | Pennsylvania | Bank wire transfer of approximately $168,611 from M&T Bank's Residential Mortgage Division account to Customers Bank Warehouse Lending account ending in 1534, to be applied to CFMC's outstanding warehouse credit line balance. |

All in violation of Title 18, United States Code, Section 1343.

17

## COUNT ELEVEN

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.     At all times material to this information, Customers Bank was a financial institution, based in Phoenixville, Pennsylvania, the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate Number 34444.

2.     From in or about March 2012 through in or about March 2013, CFMC was a direct mortgage lender based in Delaware County, Pennsylvania.

3.     From in or about March 2012 through in or about March 2013, in the Eastern District of Pennsylvania and elsewhere, defendant

### DAVID FILI, JR.

together and with G.B., knowingly executed, attempted to execute, and aided and abetted the execution of, a scheme to defraud Customers Bank and to obtain monies owned by and under the care, custody, and control of Customers Bank by means of false and fraudulent pretenses, representations, and promises.

## THE SCHEME

4.     Paragraphs 1 through 18, 20, 23 through 28, 31, 32, 38, 39, and 44 of Counts One through Ten are incorporated here.

5.     On or about March 12, 2012, defendant DAVID FILI, JR. and G.B., acting on behalf of CFMC, signed a contract with Customers Bank pursuant to which Customers Bank agreed to provide a warehouse line of credit to CFMC for the purpose of enabling CFMC to issue mortgage loans.

6.     In or about March 2012, G.B. and defendant DAVID FILI, JR. provided Guarantee and Surety Agreements (hereinafter the "Guarantees") to Customers Bank that

required G.B. and defendant DAVID FILI, JR. to personally assume CFMC's repayment obligations under the warehouse agreement if CFMC became unable to meet the warehouse line of credit's repayment terms, and also provided false financial statements of CFMC that failed to list CFMC's additional liabilities caused by the ongoing fraud scheme, overstated CFMC's available cash and overstated the value of real estate listed on CFMC's balance sheet.

7.     At the time they entered into the agreement with Customers Bank and at all times that they sought and obtained advances on the Customers Bank warehouse line of credit, G.B. and defendant DAVID FILI, JR. failed to disclose to Customers Bank that G.B. had access to Park Avenue Abstract's bank accounts at PNC Bank.

8.     At all times that they sought and obtained advances on the Customers Bank warehouse line of credit, G.B. and defendant DAVID FILI, JR. failed to disclose to Customers Bank that G.B. and defendant DAVID FILI, JR. were not using the Customers Bank warehouse line of credit advances to satisfy prior first mortgages related to the transactions identified in the Closing Protection Letters and were instead using the advances for a variety of purposes, including to pay their own personal expenses and to satisfy old first mortgages that had never been timely satisfied with loan proceeds relating to those transactions.

9.     In order to hide the existence of the scheme from Customers Bank and CFMC's individual clients, defendant DAVID FILI, JR. also used some of the funds advanced by Customers Bank to make monthly mortgage payments on individual clients' first mortgages that Customers Bank and the individual clients had been led to believe had already been satisfied.

10.     In order to gain control over funds wired by Customers Bank on the warehouse line of credit for loans issued by CFMC as to which Park Avenue Abstract was not

the third-part settlement agent, G.B. and defendant DAVID FILI, JR. caused false Closing

Protection Letters and false wiring instructions to be sent to Customers Bank that falsely listed

Park Avenue Abstract as the title company and falsely listed a CFMC bank account at PNC Bank

over which G.B. and defendant FILI had control as the escrow account into which the warehouse

line of credit advances should be wired.

           11.    On or about the following dates, in order to induce Customers Bank to

wire advances on the warehouse line of credit to a CFMC bank account at PNC Bank that they

controlled, defendant DAVID FILI, JR. caused false Closing Protection Letters and false wiring

instructions to be uploaded electronically via the internet to Customers Bank's Warehouse

Lending department in connection with the following loans, which caused Customers Bank to

wire the following approximate warehouse advance amounts from a Customers Bank account

located in the Eastern District of Pennsylvania to a PNC Bank account ending in 4102 located in

the Eastern District of Pennsylvania:

| DATE | PROPERTY ADDRESS | PARK AVENUE ABSTRACT FILE # | WAREHOUSE ADVANCE AMOUNT |
|---|---|---|---|
| 2/15/13 | 125 Briarcliff Drive, Egg Harbor, NJ | NJPARK-716 | $338,102 |
| 2/21/13 | 36 Hilltop Terrace, Bloomingdale, NJ | NJPARK-726 | $270,284 |
| 2/22/13 | 198 Cobblestone lane, Westville, NJ | NJPARK-731 | $145,031 |
| 2/25/13 | 1011 Delaware Avenue, Havertown, PA | PAPARK-643 | $285.101 |
| 2/26/13 | 9 Coles Avenue, Cherry Hill, NJ | NJPARK-658 | $169,215 |
| 2/26/13 | 3408 Holyoke Road, Philadelphia, PA | NJPARK-682 | $185,798 |
| 2/26/13 | 204 E. Dorothys Way, Lincoln University, PA | PAPARK-611 | $353,116 |
| 2/27/13 | 1648 Whitehouse Road, Maple Glen, PA | PAPARK-623 | $378,806 |

| *DATE* | *PROPERTY ADDRESS* | *PARK AVENUE ABSTRACT FILE #* | *WAREHOUSE ADVANCE AMOUNT* |
|--------|---------------------|-------------------------------|----------------------------|
| 2/27/13 | 77 Potter Street, Haddonfield, NJ | NJPARK-616 | $268,707 |
| 2/28/13 | 72 Colts Neck Drive, Sicklerville, NJ | NJPARK-711 | $145,141 |
| 3/04/13 | 907 Radclyffe Street, Bethlehem, PA | PAPARK-641 | $130,126 |
| 3/04/13 | 519 Stambridge Road, Morton, PA | PAPARK-628 | $183,759 |
| 3/05/13 | 400 Park Lane, Northfield, NJ | NJPARK-758 | $140,662 |
| 3/06/13 | 643 Mallard Road, Wayne, PA | PAPARK-607 | $383,257 |
| 3/07/13 | 503 Westerly Drive, Marlton, NJ | NJPARK-772 | $198,744 |
| 3/07/13 | 197 Alphano Road, Great Meadows, NJ | NJPARK-710 | $186,600 |
| 3/08/13 | 407 Degas Court, Williamstown, NJ | NJPARK-671 | $161,807 |
| 3/08/13 | 406 Schwenksville Road, Schwenksville, PA | PAPARK-604 | $132,976 |
| 3/08/13 | 529 Forrest Avenue, Houston, PA | PAPARK-634 | $146,211 |

12.     Defendant DAVID FILI, JR. allowed the borrowers to execute mortgage documents in connection with the loans set forth above despite knowing that he and G.B. intended to use the specific funds advanced by Customers Bank on each loan for purposes other than those disclosed to Customers Bank and the borrowers.

13.     By their actions, G.B. and defendant DAVID FILI, JR. caused Customers Bank to sustain an actual loss of over $2,500,000.

All in violation of Title 18, United States Code, Sections 1344 and 2.

21

## COUNT TWELVE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      At all times material to this information, M&T Bank was a financial institution, based in New York, the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate Number 588.

2.      From in or about March 2012 through in or about March 2013, CFMC was a direct mortgage lender based in Delaware County, Pennsylvania.

3.      From in or about March 2012 through in or about March 2013, in the Eastern District of Pennsylvania and elsewhere, defendant

### DAVID FILI, JR.

together and with G.B. knowingly executed, attempted to execute, and aided and abetted the execution of, a scheme to defraud M&T Bank and to obtain monies owned by and under the care, custody, and control of M&T Bank by means of false and fraudulent pretenses, representations, and promises.

### THE SCHEME

4.      Paragraphs 1 through 18, 20, 23 through 28, 38, 39, and 42 through 44 of Counts One through Ten are incorporated here.

5.      Beginning in or about May 2012, G.B. and defendant DAVID FILI, JR. sold mortgages to M&T Bank that had been issued by CFMC, by misrepresenting those mortgages as "first mortgages," when as G.B. and defendant FILI then knew, they were in reality second mortgages because the then-existing first mortgages had not been satisfied.

6.      On or about the following dates, defendant DAVID FILI, JR. caused the following loans to be sold by CFMC to M&T Bank, by providing false HUD-1 settlement

statements and closing instructions and representing the loans as first mortgages, and without disclosing the fact that the then-existing first mortgages to remain unsatisfied at the time of the sale, which caused M&T Bank to wire the following approximate amounts from M&T Bank located in New York to Customers Bank located in Pennsylvania:

| DATE | PROPERTY ADDRESS | PARK AVENUE ABSTRACT FILE # | AMOUNT WIRED |
|------|------------------|----------------------------|--------------|
| 2/27/13 | 313 Dalton Street, Philadelphia, PA | PAPARK-504 | $166,761 |
| 3/05/13 | 21 Trescott Lane, Willingboro, NJ | NJPARK-721 | $197,904 |
| 3/06/13 | 4 Tendring Lane, Cherry Hill, NJ | NJPARK-733 | $318,715 |
| 3/07/13 | 7171 Walker Street, Philadelphia, PA | PAPARK-640 | $168,611 |

7.      By his actions, defendant DAVID FILI, JR., along with G.B. and others known and unknown, caused M&T Bank to sustain an actual loss of in excess of over $850,000.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Sections 1343 and 1344 set forth in this information, defendant

### DAVID FILI, JR.

shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of such offense, including but not limited to $9,659,689 in United States currency (money judgment).

2.      If any of the property described above, as a result of any act or omission of the defendant:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred to, sold to, or deposited with a third party;

    c.      has been placed beyond the jurisdiction of this Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 24661(c), both incorporating 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982 and Title

28, United States Code, Section 2461.

ZANE DAVID MEMEGER
UNITED STATES ATTORNEY